UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE VIRGINIA A. PHILLIPS, U.S. CHIEF DISTRICT JUDGE

BMG RIGHTS MANAGEMENT US, LLC,  )
                                )
              Plaintiff,        )
                                )
     vs.                        )      Case No.
                                )   CV 18-3723 VAP (JEMx)
GLOBAL EAGLE ENTERTAINMENT, INC.,)
et al.,                         )
                                )
              Defendants.       )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS
MOTIONS HEARING
MONDAY, AUGUST 5, 2019
2:27 P.M.
LOS ANGELES, CALIFORNIA

---

**MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA  90012
(213) 894-2305

UNITED STATES DISTRICT COURT

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4       GERARD FOX LAW, PC
         BY:  LAUREN M. GREENE
 5       BY:  CHAKA C. OKADIGBO
              Attorneys at Law
 6       1880 Century Park East, Suite 1410
         Los Angeles, California 90067
 7       (310) 441-0500

 8


 9   FOR THE DEFENDANTS:

10       WINSTON AND STRAWN, LLP
         BY:  DIANA H. LEIDEN
11       BY:  DEVEN T. KLEE
              Attorneys at Law
12       333 South Grand Avenue, Suite 3800
         Los Angeles, California  90071
13       (213) 615-1700

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                 MONDAY, AUGUST 5, 2019; 2:27 P.M.
 2                      LOS ANGELES, CALIFORNIA
 3                                -oOo-
 4           THE COURTROOM DEPUTY:  Calling Item No. 8 on the
 5   Court's calendar, LA Civil 18-3723 VAP, BMG Rights Management
 6   U.S., LLC, vs. Global Eagle Entertainment, Inc., et al.
 7           Counsel, would you please come forward and state
 8   your appearances for the record.
 9           MS. LEIDEN:  Good afternoon, Your Honor.
10   Diana Leiden from Winston and Strawn on behalf of defendants.
11   And with me is my colleague also from Winston and Strawn,
12   Deven Klee.
13           THE COURT:  Thank you.
14           MS. GREENE:  Good afternoon, Your Honor.
15   Lauren Greene from Gerard Fox Law on behalf of plaintiff BMG.
16           THE COURT:  Thank you.
17           MR. OKADIGBO:  And Chaka Okadigbo, also from
18   Gerard Fox Law on behalf of BMG.
19           THE COURT:  I'm sorry, Counsel, could you -- I don't
20   see your name on the pleading.  So could you spell it for me?
21           MR. OKADIGBO:  Sure.  My first name is spelled
22   C-h-a-k-a.  My last name is spelled O-k-a-d, as in David, i-g,
23   as in glue, b, as in boy, o.
24           THE COURT:  Oh.  All right.  Thank you very much.
25           All right.  There are three matters on the calendar.
```

```
 1  There's the defendants' motion for partial summary judgment and
 2  then the plaintiff's motions as to the schedule -- to amend the
 3  Complaint and to extend the dates set forth in the Court's
 4  scheduling order.
 5          Ms. Leiden, do you want to -- is it Leiden or
 6  Leiden?
 7          MS. LEIDEN:  It's Leiden.
 8          THE COURT:  Leiden.  I'm sorry.  Do you want to
 9  argue your motion first?
10          MS. LEIDEN:  Yes, Your Honor.  Thank you very much.
11          And I have taken a look at the Court's tentative
12  order on defendants' motion for partial summary judgment.  And
13  just a few points I wanted to make in response to the
14  tentative.
15          One point I just would like to make is that
16  defendants' position that the question as to whether the
17  plaintiff had either actual or constructive knowledge of the
18  potential claims should be based on looking at the totality of
19  the facts that defendants have presented rather than looking at
20  them piecemeal.
21          And here, as the Court noted, we did present
22  evidence of public lawsuits that were filed and the attendant
23  publicity that came with those lawsuits, as well as just the
24  general fact that defendants' provision of audio content to
25  major air carriers like United and American Airlines was open
```

1  and notorious.

2  And while it's true, as the Court pointed out on page 9 of the tentative, that we didn't cite cases specifically where it's -- a small number of online articles would be enough to warrant an investigation, defendants did cite cases involving other types of public statements, including the *Napster* case where there were public statements made by Napster about -- essentially that their platform infringed copyright, as well as the *Chivalry-NBC Universal* case where it was the release -- the wide release of a movie that put the plaintiff on notice.

12  THE COURT: Don't you think those are -- excuse me -- really distinguishable facts from what -- what you cited in this case?

15  MS. LEIDEN: I think they're not exactly the same, but I think that they are instructive here, specifically the *Napster* case, because there the plaintiff -- one of the facts that the Court took note of was that the plaintiff was an owner, I believe, in that case of thousands of copyrights, something like that.

21  And just the fact that there had been some public statements -- the Court didn't specify where exactly the public statements were made but presumably it was in the press -- put the plaintiff there on notice of potential claims even though the --

1  THE COURT: Excuse me.

2  MS. LEIDEN: -- the plaintiff didn't specifically
3  know which of its thousands of works here had -- or that had
4  been infringed. So I think that case is particularly
5  instructive because, here, BMG says that they own something
6  over 2.5 million rights to sound recordings and musical
7  compositions.

8  And so the evidence that the defendants have put
9  together involving the public statements in the press and just
10  the public nature of the lawsuits and specifically the press
11  that BMG's general counsel testified that he did review, as
12  part of his industry, in *The Hollywood Reporter* and *Billboard*.

13  And so I think even though the facts aren't exactly
14  the same as in the cases that we cited in terms of online
15  articles, I think that the principles would hold.

16  THE COURT: All right. Thank you.

17  Do you wish to respond?

18  MS. GREENE: Only briefly, Your Honor.

19  I think you distinguish the cases in the tentative.
20  I would just like to -- just note the distinction from the
21  *Napster* case.

22  You know, the Court in that case, they relied on the
23  fact that the plaintiff there could have with a simple
24  investigation into Napster determined that its works were being
25  used. All the plaintiff had to do was get a computer, go on

1 the Internet, look at Napster.
2             Here, that's not something that the plaintiff would
3 have been able to do.  They would have -- been having to go on
4 a number of different airplanes to potentially hear one of
5 their works, and then that person would have to know that this
6 work was in the BMG's catalog.  That person would have to know
7 that this work isn't licensed by this airline or this work
8 isn't licensed by the company who's providing the music for
9 this airline.  I think it's just too attenuated of a connection
10 that they're trying to argue here, and I think that really
11 distinguishes the *Napster* case.
12             THE COURT:  All right.  Were there other points that
13 you wish to make?
14             MS. LEIDEN:  Sure.  Just really briefly, Your Honor.
15 The Court's note about the *UMG* case in which Judge Wu rejected
16 the argument there that the open --
17             THE COURT:  Travel.
18             MS. LEIDEN:  -- and notorious nature of the business
19 was sufficient.  Again, and just a related point there that --
20 again, looking at the totality of the circumstances, even
21 accepting Judge Wu's analysis that the open and notorious
22 nature wouldn't itself put the plaintiff on notice, it's the --
23 here, we have not just that factor but also the others that
24 we've already discussed, as well as obviously in the *UMG* case,
25 the *UMG* case itself was not one of the -- one of the facts.

1 And that's one of the differences here.

2     THE COURT: All right. And now, Ms. Greene, do you
3 wish to argue your motions?

4     MS. GREENE: I would briefly, Your Honor. And I
5 note that the tentative really focused in on the element of
6 BMG's diligence. So I would like to address BMG's diligence,
7 first, with regards to the motion to continue.

8     THE COURT: All right.

9     MS. GREENE: First, Your Honor, I think we broke out
10 the diligence in a couple of different categories. Diligence
11 regarding putting forth the chain of title documentation from
12 the playlist that plaintiff received from defendants and then,
13 second, diligence with the obtaining certain financial
14 documents that BMG needed in order to put forth this expert
15 report.

16     First, as for the playlist, Your Honor, yes, we did
17 receive about 300 or so playlists on March 25th. And BMG
18 worked extremely diligently to identify its works on that
19 playlist and to do the time-consuming process of tracking each
20 of those works through BMG's chain of title documents.

21     And as soon as we realized that, you know, this
22 might take some time because these playlists were in wildly
23 different formats that made it incredibly difficult for BMG's
24 systems to match what was in the playlist versus what was on
25 the system and then to match what was on the system to the

```
 1   documents.
 2              And so in --
 3              THE COURT:  Well, defense counsel in the opposition
 4   to the motion on that particular issue asserted that the
 5   documents -- or the production was made in that format because
 6   Magistrate Judge McDermott had ordered that the documents from
 7   the prior litigation be disclosed in that format, number one.
 8              And, number two, that your side did not ask -- or
 9   did not ask for it to be submitted in any other form.
10              MS. GREENE:  And --
11              THE COURT:  Do you want to address that?
12              MS. GREENE:  Your Honor, I would address -- we're
13   not necessarily faulting defendants for the fact that the
14   playlists were in wildly different formats.  We're simply
15   noting that that is a reason of not -- the main reason why
16   matching chain of title documents took so long.  We're
17   certainly not saying that they purposely put everything in
18   different formats to make it hard for us.  But it actually was
19   hard for us because it was in all of those different formats.
20              And once we realized, you know, we're running up on
21   a little bit of a time crunch in April -- so we received the
22   playlists on March 25th.  And then counsel had mentioned April,
23   that's when we started asking for a continuance.  And then
24   we -- we sought that leave ex parte.  The ex parte was denied
25   in June, June 7th.  And at that time, we were finishing up
```

1  discovery, conducting depositions, briefing our motion for
2  summary judgment, opposing their motion for summary judgment,
3  putting together our reply papers for our motion for summary
4  judgment.
5           The week after we had finished all of that is when
6  we filed the motion to continue.  I believe BMG and its counsel
7  was acting as diligently as it could in bringing this motion in
8  light of all of the other filings that BMG wanted to make sure
9  we got done on time and in light of just the difficulty it was
10 for BMG to put together that chain of title documents.
11          As I had mentioned in the briefs, we had folks from
12 four of their offices across the world really doing their best
13 to put it all together.  And it just took time, Your Honor.
14 And that's -- you know, I think we were being diligent.  It's
15 just something that took time.
16          THE COURT:  Ms. Leiden, do you wish to respond?
17          MS. LEIDEN:  Yes, thank you.
18          Just, first of all, BMG, this is not their first
19 copyright lawsuit.  They've been a copyright plaintiff before.
20 It seems like they should reasonably have known that it would
21 take them some period of time to trace ownership and chain of
22 title of their works based on that.
23          But separate and aside from that, I think the facts
24 and the timeline just speak for themselves here in that BMG
25 knew, at least in late March, early April, when it was first

1  conducting the analysis of chain of title, that it was going to
2  take them a substantially long period of time.  And it was just
3  kind of dribs and drabs and here and there, that they were
4  requesting extensions, that defendants did agree to certain
5  extensions.  And --
6              THE COURT:  Well, extensions as to expert discovery.
7              MS. LEIDEN:  Yes.  Yes, Your Honor.
8              And the defendants did -- did not want to and still
9  do not want to extend the entire case schedule.  We just never
10 saw good cause for it.  And the only good cause that had been
11 presented at that point was how long the chain of title was
12 taking, and that was back in April.
13             And you know, respectfully, defendants' position is
14 that just the plaintiff having to do other work under a
15 scheduling order that they agreed to is not sufficient basis to
16 delay that long in seeking a noticed motion here.  And that
17 same fact also shows that it is incredibly prejudicial to the
18 defendants if the case schedule was extended, given that, you
19 know, we did have to spend the time on summary judgment and in
20 the last month pretrial documents and submissions that, you
21 know, we'll never get back.
22             THE COURT:  The trial date in this case is set for
23 September 17th?
24             MS. GREENE:  Yes, Your Honor.
25             MS. LEIDEN:  Yes.

```
 1              THE COURT:  17th?
 2              And I think you mentioned this in the briefing.  But
 3   the plaintiff's summary judgment -- or summary adjudication
 4   motion is now set for hearing on the 26th.
 5              MS. GREENE:  Yes, Your Honor.
 6              THE COURT:  So obviously you're going to have to
 7   file your memorandum of contentions and so forth before --
 8   well, before you know what the ruling is on the summary
 9   judgment.
10              MR. OKADIGBO:  Today.
11              MS. GREENE:  Yes, Your Honor.  They are due today,
12   Your Honor.
13              THE COURT:  Let me change -- excuse me.  Let me
14   change tacks for a moment.
15              Have the parties had a settlement conference?
16              MS. GREENE:  We did on February 28th, Your Honor.
17              THE COURT:  Oh.  That's right. You had a mediation,
18   but you said it wasn't productive.
19              Would it be productive -- are you thinking of going
20   back to that mediator or engaging in some other round of
21   mediation?
22              MS. LEIDEN:  We haven't discussed specifically -- at
23   least recently going back to private mediation or to -- I
24   believe it was Joel Grossman.  Defendants are, you know,
25   willing to explore settlement as we have been, but we haven't
```

1  specifically discussed going back to private mediation.
2          THE COURT:  What I'm thinking is I might ask one of
3  my colleagues, Judge Otero, if he's willing to conduct a
4  settlement conference for you.  I don't -- yeah, he recently
5  took senior status, and he's been very helpful, but I can't
6  guarantee that he would have time to do it.
7          If he does, would that be -- I'm just trying to
8  think when would be the best -- probably after your motion is
9  heard.  Although, that's pretty late in the game too.
10         Let me -- since we're pretty close to your trial
11 date, let me see what the calendar looks like for that date.
12         I have five cases set for trial that day, and yours
13 is the -- yours is No. 5.
14         I think of the five cases, I think one of them is
15 definitely going to go.  It's a criminal case.  And I have -- I
16 will be very surprised if that one doesn't go to trial.  So the
17 likelihood is -- of the others that are set for that day, there
18 are two other criminal cases, but I think one of them is going
19 to resolve.  And there's another civil case.
20         So, you know, the likelihood is that you won't go to
21 trial on the 17th, but it's quite likely that you would go the
22 following week.  I think that -- the criminal case that's going
23 to start on the 17th, I think -- I don't see that one
24 resolving.  It's -- I don't think it will take much more than
25 about four days to try it.  So it could be that you trail just

```
 1  one week to the 24th.
 2          But I -- if the parties want to have a little more
 3  certainty and you wanted to enter into a stipulation to
 4  continue the trial date a week or two -- let's see.  On the 1st
 5  I have -- I've only got two cases set on the 1st.  So I just
 6  throw that out there.  You can give it some thought.
 7          It's unlikely -- it's not impossible, but it's
 8  unlikely that you would really start on the 17th, given the
 9  criminal case that I'm sure is going to go.  Like I said, I
10  have five cases set that day, but I think at least one of the
11  others is a criminal case, which I think is about to be
12  resolved.  But just so you know.  I can't tell you that you
13  won't start on the 17th, but I would say it's unlikely.  So you
14  can file that away.
15          MS. LEIDEN:  And just from defendants' perspective,
16  I think our main concern is that -- and it sounds like this
17  would not be what would happen -- but that there wouldn't be
18  any sort of extension of discovery or any other pretrial
19  deadlines associated, it would just purely be -- it sounds like
20  perhaps time to have a settlement conference, if we so
21  stipulated between August 26th and --
22          THE COURT:  And I may just -- if Judge Otero is
23  available, I may just order the parties to participate in a
24  settlement conference even before the 17th.
25          MS. LEIDEN:  And defendants are happy to consult
```

```
 1   with the client.  I'll also check the scheduling of
 2   Michael Elkins who's our lead trial counsel and make sure.  But
 3   that would, I think -- obviously, our main concern is that, you
 4   know, we're just going to keep moving forward with the pretrial
 5   and that, so --
 6              THE COURT:  All right.  Anything further from either
 7   side?
 8              MS. LEIDEN:  No.  Not from defendants.
 9              THE COURT:  Ms. Greene?
10              MS. GREENE:  I don't believe so, Your Honor.  Seems
11   like we're --
12              THE COURT:  All right.  I'm going to take the
13   motions under submission.
14              You can return your copies of the tentative ruling
15   to the clerk.
16              Thank you very much.
17              MS. LEIDEN:  Thank you, Your Honor.
18              THE COURTROOM DEPUTY:  This concludes the Court's
19   calendar.  This court is now adjourned.
20              (Proceedings concluded at 2:45 p.m.)
21
22
23
24
25
```

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

      I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

      DATED THIS 5TH DAY OF SEPTEMBER, 2019.

      /S/ MYRA L. PONCE
_____
    MYRA L. PONCE, CSR NO. 11544, CRR, RDR
      FEDERAL OFFICIAL COURT REPORTER